```
UNITED STATES DISTRICT COURT                                          C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
JUAN HERNANDEZ,                                             :   **MEMORANDUM**
                                      Petitioner,           :   **DECISION AND ORDER**
                                                            :
                - against -                                 :   19-cv-5832 (BMC)
                                                            :
SUPERINTENDENT OF CLINTON                                   :
CORRECTIONAL FACILITY,                                      :
                                                            :
                                      Respondent.           :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Petitioner *pro se* seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state court conviction for two counts of first-degree sexual conduct against a child and two counts of endangering the welfare of a child. The facts will be set forth below as necessary to address petitioner's points of error, but to summarize, petitioner repeatedly sexually assaulted, over more than a one-year period, the great-niece and great-nephew of his then-wife. He was arrested when on one occasion, his wife caught him in the act. Petitioner challenges a number of discretionary evidentiary rulings by the trial court as to the reactions of the children and his former wife immediately following the last assault, as well as comments in summation by the prosecutor. The Appellate Division separated out each argument and found some were unpreserved for appeal and, in any event, without merit, and that others, although preserved, were also without merit.

Applying the standards of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, I find this case does not warrant habeas corpus relief.

# I.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the decision of the state court. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). Moreover, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (noting that state courts "need not fear reaching the merits of a federal claim in an *alternative* holding" because "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

There is no more fundamental a rule of criminal procedure law in New York and probably in every other common law jurisdiction than that requiring a contemporaneous objection with enough specificity to alert the trial court to the problem so that corrective action can be taken immediately. See Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial

must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 739 (1995); see also People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).

First, petitioner contends that the trial court improperly received into evidence one picture of each child victim at their respective ages (5 and 6) at the time of attack, years before the trial. The Appellate Division held that this claim was "unpreserved for appellate review and, in any event, without merit." People v. Hernandez, 166 A.D.3d 647, 88 N.Y.S.3d 51 (2nd Dep't 2018), leave to app. denied, 32 N.Y.3d 1172, 97 N.Y.S.3d 576 (2019). The court's ruling that this claim was not preserved due to waiver was clearly correct. Indeed, the trial court specifically inquired of defense counsel as to whether he had any objection to the photographs, and defense counsel responded in the negative.

Second, petitioner contends that the two police officers who arrived at the scene should not have been allowed to testify as to what the petitioner's wife and the children themselves told the officers in describing the assaults, nor should the officers have been permitted to characterize the emotional condition of one of the children ("crying" and "upset") and petitioner's wife. Petitioner contends that this was cumulative and unduly prejudicial since his wife and the children themselves testified. But no objection was made to this evidence on this basis, and the

3

Appellate Division again properly held that it was unpreserved for appellate review (and, in any event, without merit).

Third, petitioner complains that an expert witness for the prosecution was permitted to read from medical records that included statements by one of the child victims. His trial counsel objected, and the objection was sustained. Trial counsel requested no further corrective action, and raised no further objection. The Appellate Division held that "[u]nder the circumstances, the defendant's contentions with respect to the expert's testimony are unpreserved for appellate review," id. at 648, 52, and that the argument was in any event without merit. Again, the Appellate Division's invocation of a procedural bar is based on a firmly established and regularly followed rule of New York procedural law.

## II.

Federal courts can still review procedurally barred claims if the petitioner can demonstrate cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986). The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . that 'some interference by state officials' made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488) (alteration in original). However, any claim that

ineffective assistance of counsel constitutes "cause" for the failure to preserve the objection must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Under the liberal standard for exhaustion of claims in this Circuit, see Abdurrahman v. Henderson, 897 F.2d 71, 73 (2d Cir. 1990), petitioner exhausted his ineffective assistance of counsel claim, albeit barely. In a single-sentence footnote, he argued to the Appellate Division that "should the Court choose not to exercise its interest of justice jurisdiction [to hear the unpreserved claims], it should nonetheless reverse based on counsel's ineffectiveness for failing to object … with no possible strategic basis for doing so", and he cited, *inter alia*, to Strickland v. Washington, 466 U.S. 688 (1984).

The Appellate Division summarily rejected this ineffective assistance claim on the merits. See Hernandez, 166 A.D.3d at 649, 88 N.Y.S.3d at 52. Because it did so, my review of its decision is subject to the limitations of AEDPA. Section 2254(d)(1) of Title 28 permits habeas corpus relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

Petitioner's burden is amplified here because the standard for showing ineffective assistance of counsel is itself narrow. The relevant test is set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and citations omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial,

not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has recently noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018). Thus, the combination of AEDPA and Strickland makes habeas corpus review of the Appellate Division's decision "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Petitioner's one-sentence argument of ineffective assistance argument comes nowhere near to meeting this standard. At the outset, the fact that the Appellate Division alternatively affirmed each the rulings that he challenges on the merits means that he has not been prejudiced by his trial counsel's failure to object, i.e., even if trial counsel had objected, the trial court's ruling would have been sustained on appeal. Moreover, it is extraordinarily difficult to contend that these isolated discretionary rulings were in any way erroneous. Petitioner's theme is that together, the trial court allowed cumulative, inflammatory evidence, but this was a case involving the brutal sexual assault of young children – it would be hard to convey petitioner's crimes to the jury without this cringe-worthy evidence. As for cumulativeness, because these children were so young, it was important for the prosecution to show that they maintained their version of the events consistently and that their delayed disclosure was consistent with their trial testimony.

Any cumulativeness was the direct result of the nature of petitioner's crimes and the need to corroborate testimony of minors. There was nothing objectively unreasonable in trial counsel's recognition that continuing objections when damning details emerged would simply emphasize those details.

Nor does this case present a miscarriage of justice. The evidence against petitioner was overwhelming, consisting of both children's testimony, corroboration by the police and an expert

7

witness, and observation by the petitioner's former wife, who caught petitioner *in flagrante delicto*. There is thus neither cause and prejudice, nor a miscarriage of justice, sufficient to overcome the procedural bar.

### III.

The Appellate Division rejected several of petitioner's claims solely on the merits. First, petitioner argued that the trial court was required to instruct the jury on the limited use of "prompt outcry" evidence at the time the evidence was admitted, rather than as part of the final charge (as it did). Second, he argued that the trial court improperly admitted the recording of the children's guardian's 911 call to the police after she caught petitioner in the act. Third, he argued that the prosecutor's closing argument deprived him of due process.[1] I review the Appellate Division's decision on these points under the AEDPA's deferential standard as described above. Petitioner's claims do not survive that review.

The Supreme Court has never reviewed the admissibility of prompt outcry evidence, let alone the need or timing for delivering a limiting instruction as to such evidence, so the Appellate Division's decision cannot be contrary to, or an unreasonable application of, any Supreme Court authority. Cf. Carmel v. Texas, 529 U.S. 513 (2000) (elimination of requirement for corroboration under state law where rape victim did not raise hue and cry for more than six months after attack could not be applied *ex post facto*).

---

[1] The Appellate Division held that petitioner's objections to the closing argument were "largely unpreserved" but that "[i]n any event, most of the remarks" were not objectionable. It also held that "[a]lthough some of the prosecutor's remarks were improper, those remarks were not so flagrant or pervasive as to deny the defendant a fair trial, and to the extent that any prejudicial effect may have resulted from any of the challenged remarks, it was ameliorated by the Supreme Court's instructions." Hernandez, 166 A.D.3d at 658-49, 88 N.Y.S.3d at 52 (citations omitted). Because the Appellate Division did not clearly differentiate between petitioner's arguments that were procedurally barred and those that were without merit, I review petitioner's entire claim as having been rejected on the merits and subject to the AEDPA standard. See Jimenez v. Walker, 458 F.3d 130 (2d Cir. 2006).

8

The trial court admitted the 911 recording even though petitioner's former wife testified. Petitioner claimed that this was more prejudicial than probative.[2] But I can see no error, let alone constitutional error, let alone an unreasonable application of any Supreme Court authority, in the Appellate Division's affirmance of the trial court's exercise of its discretion. The call definitely added more than the witness's testimony alone. First, the call contained two garbled statements, which the witness was able to fill in when she testified, and which corroborated her testimony. Second, she was able to explain that when she said, "get the f--- off me" in the call, she did that because petitioner was trying to take the phone from her, and that he ultimately succeeded in cutting off the call. These explanations of the 911 call coupled with the call itself enhanced her credibility. And although petitioner argued that this constituted "improper bolstering," that New York evidentiary rule is not of a constitutional dimension. See Clanton v. Lee, No. 14-cv-6024, 2015 WL 5693718 (E.D.N.Y. Sept. 27, 2015); Heath v. Lavalley, No. 11-cv-2962, 2014 WL 4954658 (E.D.N.Y. Oct. 2, 2014); Franco v. Lee, No. 10-cv-1210, 2013 WL 704655, at *8 (E.D.N.Y. Feb. 26, 2013) ("A claim of improper 'bolstering' … is not [itself] a cognizable basis for federal habeas relief."); Glover v. Burge, 652 F. Supp. 2d 373, 377 (W.D.N.Y. 2009) ("[T]he overwhelming weight of federal authority in this Circuit holds that 'bolstering' of a prosecution witness's testimony does not state a constitutional claim redressable on federal habeas review.").

## IV.

Finally, the combination of AEDPA's deferential review standard and the limited constitutional constraints on a prosecutor's closing argument again makes it doubly difficult for petitioner to argue that the closing constitutionally tainted his trial. For purposes of federal

---

[2] Petitioner did not deny that the call constituted an excited utterance for purposes of the rule against hearsay.

9

habeas corpus review, a prosecutor has wide latitude in making her summation. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." Darden v.Wainwright, 477 U.S. 168, 181-83 (1986). In addition, to warrant habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (habeas relief warranted only where prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). Prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute "egregious misconduct ." Donnelly, 416 U.S. at 647-48.

Petitioner's argument is that the cumulative effect of the prosecutor's improper comments during summation violated petitioner's right to a fair trial. Specifically, petitioner claims that during summation, the prosecutor: (1) appealed to the sympathy of the jury by stressing the vulnerability and harm to the children while vilifying petitioner; (2) mischaracterized testimony; (3) attempted to shift the burden of proof; and (4) denigrated the defense. The Appellate Division's rejection of this claim was not contrary to or an unreasonable application of any Supreme Court authority.

As to sympathy and vilification, petitioner argues that the prosecutor used too much detail in summarizing the evidence of the assault, and that she referenced the children's physical pain and fear (petitioner most vehemently protests the prosecutor's reference to one of the children as "a little defenseless animal … caught by this grown man"). She referred to the

10

children as "survivors." She argued that petitioner had "scared a small child into complete silence", and she quoted petitioner's written statement to the police that he was "aroused by a six-year old."

The highly detailed testimony of the offenses that the children gave was graphic, but it was those same details that made the testimony self-corroborating. So too did the children's emotional reaction to the crimes, both at the time of the offense and on the witness stand. In going over these details and stressing the children's emotional reactions, the effect may well have been to invoke some sympathy for the children and disdain for petitioner. But the prosecutor drew no unfair inferences from the record, and, more importantly, any invocation of sympathy was the natural byproduct of the particulars of petitioner's crime. The facts as shown by the evidence and found by the jury were that young children were horrendously abused and such abuse could only occur at the hands of a depraved perpetrator. The prosecutor was not required under Supreme Court precedent to sterilize that evidence in her summation. See Dawkins v. New York, No. 08-cv-2441, 2011 WL 3625150, at *7 (E.D.N.Y. 2011) (habeas relief not warranted where prosecutor's summation referenced that child victims were "innocent," "frightened," and "fearing for their lives," and asked the jurors to "imagine how it felt for these children to be restrained at gunpoint ... with that awful, awful feeling you get in your stomach when you are scared to death"); Fuentes v. Ebert, No. 06-cv-5813, 2009 WL 1755500, at *11–13 (S.D.N.Y. June 22, 2009) (habeas relief not warranted despite prosecutor stating that the victim and her sister were young and would always be victims; described the victim as a "little girl ... with the courage of a warrior"; portrayed the victim's sister as "a very young girl, a very small girl, just starting to understand things" who would "one day ... comprehend" the abuse she had witnessed; and stated that "if a child victim's testimony could not be relied upon, these people

11

would never be punished"); <u>Dell v. Ercole</u>, No. 06-cv-1724, 2009 WL 605188, at *9 (E.D.N.Y. 2009) (habeas relief not warranted where prosecutor's summation noted the "courage" that the "thirteen year old displayed when he rushed out of there after chewing his way out of the duct-tape like a dog."); <u>Ogletree v. Graham</u>, 559 F. Supp. 2d 250, 259-60 (N.D.N.Y. 2008) (finding that, because sympathy-eliciting comments were "supported by the evidence," prosecutor did not commit misconduct); <u>Osorio v. Conway</u>, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (prosecutor's comment that the defendant's face was the last one the victim and her child "were ever going to see on this earth" did not constitute misconduct since the comment was "fairly drawn from the evidence," which showed that the petitioner had pointed a gun at the victim's chest [and] robbed her in front of her children).

Petitioner's complaint that the prosecutor's summation shifted the burden of proof to him fares no better. During cross-examination and in his closing, defense counsel had suggested that some other adult, possibly a person known to the family as "Supreme," could have been responsible for the crimes. In responding, the prosecutor commented on the fact that at no time prior to trial, including his meetings with the police which resulted in a highly self-incriminating written statement, did petitioner suggest that Supreme was the perpetrator. This does not come near unconstitutional burden shifting under Supreme Court precedent. It was not as if the prosecutor commented on petitioner's decision not to testify at trial, <u>see</u> <u>Griffin v. California</u>, 380 U.S. 609 (1965), or referred to non-record conduct, <u>see</u> <u>Taylor v. Kentucky</u>, 436 U.S. 478, 485 (1978). Rather, the theory that defense counsel articulated invited a rebuttal by the prosecutor, who merely pointed right back to petitioner's signed statement to the police, which had been received in evidence, and thus her criticism of that argument was fair.

The mischaracterization of the evidence that petitioner advances is over minor inconsistencies, if they are inconsistencies at all, between the prosecutor's summation and the evidence. First, the evidence showed that one of the children, prior to the reporting of the crimes, had at least five appointments with pediatricians. In the first, he was accompanied by his petitioner's then-wife; in the second, third, and fourth, the child was accompanied by petitioner; and in the fifth, the child was accompanied by the then-wife. In the first, second, fourth, and fifth visit, rectal exams were deferred. The prosecutor argued that the deferral might have been petitioner's doing because the deferrals started when petitioner started accompanying the child to the doctor, but she did not mention that petitioner did not accompany the child to the first examination, which also resulted in an exam deferral. Although her recitation of the evidence was thus incomplete, the point she was making was that petitioner was so intimately involved in the child's life that the child was inhibited from reporting the abuse. The incomplete description of the medical appointment timeline, although not optimal, does not amount to constitutional error.

The next alleged mischaracterizations of the record are picayune. First, the prosecution's expert witness testified that for "some children", the effects of childhood sexual abuse last their entire lives. The prosecution described the testimony that these effects occur with "many, many" children instead of "some" children. This minor distinction does not rise to the level of a constitutional violation. Similarly, the expert testified that it would "not be unusual" for children to fail to disclose abuse at routine medical appointments, but the prosecutor stated that according to the expert, "children rarely, if ever, disclose at routine medical appointments." Although it would have been preferable for the prosecutor to hue more closely to the witness's actual words,

the Appellate Division committed no constitutional error under the AEDPA standard of review by holding that these comments did not deprive petitioner of a fair trial.

Petitioner's final point on the prosecutor's summation – that she unreasonably denigrated the defense – does not require extended discussion. In his closing, defense counsel understandably attacked the credibility of most of the prosecution's witnesses. In response, the prosecutor defended the witnesses' credibility and characterized defense counsel's argument as made in desperation since the credibility of the witnesses was clear. Perhaps the prosecutor should not have characterized the defense as minimizing the crimes, advancing the argument that, according to the defense, the crimes "were no big deal." But the very first point that defense counsel made in summation was to stress the lack of evidence showing penetration. I cannot find that characterizing that defense as minimizing the crimes violated due process as applied by Supreme Court decisions.

Finally, many cases have noted that to the extent a prosecutor steps over the line by invoking sympathy; or mischaracterizing the evidence; or suggesting a lack of proof of defendant's theory, but in a non-egregious manner, the trial court's final instructions can cure those excesses. See, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1271 (2d Cir.) (trial court's instructions "likely corrected any misperception that jury may have held" as a result of the prosecutor's comments); Liriano v. Burge, No. 07-cv-2092, 2010 WL 3924532, at *7 (E.D.N.Y. Sept. 29, 2010) (holding any prejudice the petitioner may have suffered as a result of prosecutor's comments was largely mitigated by the "measures adopted to cure the misconduct"). Here, the trial court gave the standard instruction requiring the jury to not let itself be influenced by sympathy, as well as the instruction that closing arguments are not evidence, and that it was up to the jury, not the lawyers, to draw whatever inferences they though

were reasonable. And, as to the alleged burden shifting, the detailed instruction on burden of proof was sufficient. The Appellate Division's decision to uphold the conviction was therefore not contrary to or inconsistent with any Supreme Court precedent.

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because the petition fails to present any substantial constitutional issues, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). In addition, an appeal of this decision would not be taken in good faith, so *in forma pauperis* status is denied for purposes of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 9, 2019